[No. D030452. Fourth Dist., Div. One. Mar. 1, 2000.]

CENTEX GOLDEN CONSTRUCTION COMPANY, Plaintiff and Respondent, v.
DALE TILE COMPANY, Defendant and Appellant.

994

**COUNSEL**

Fredrickson, Mazeika & Grant, Dennis W. Fredrickson, Peter S. Gregorovic, Robert L. Friedenberg and Shari I. Weintraub for Defendant and Appellant.

Law Office of Deb. C. Pedersdotter, Deb C. Pedersdotter; Hillyer & Irwin and Timothy C. Earl for Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—An agreement by a subcontractor to indemnify a general contractor for any claim made with respect to the work covered by or incidental to their subcontract may require indemnity even if the claim is not meritorious and the subcontractor is not guilty of any negligence. Thus we affirm the trial court's judgment in favor of a general contractor against a subcontractor on the general contractor's claim for indemnity, even though a jury found that the subcontractor had not been guilty of any negligence.

## SUMMARY

Plaintiff and respondent Centex Golden Construction Company (Golden) was the general contractor responsible for construction of a commercial building. Defendant and appellant Dale Tile Company (Dale) was the tile subcontractor on the project. Dale executed a subcontract which contained the following indemnity provision:

"B. General Indemnity—All work covered by this Agreement done at the site of construction or in preparing or delivering materials or equipment, or any or all of them, to the site shall be at the risk of SUBCONTRACTOR exclusively. SUBCONTRACTOR shall, with respect to all work which is covered by or incidental to this contract, indemnify and hold CONTRACTOR harmless from and against all of the following:

"1. Any claim, liability, loss, damage, cost, expenses, including reasonable attorneys' fees, awards, fines or judgments arising by reason of the death or bodily injury to persons, injury to property, design defects (if design originated by SUBCONTRACTOR), or other loss, damage or expense, including any if the same resulting from CONTRACTOR's alleged or actual negligent act or omission, regardless of whether such act or omission is active or passive. . . . However, SUBCONTRACTOR shall not be obligated under this Agreement to indemnify CONTRACTOR with respect to the sole negligence or willful misconduct of CONTRACTOR, his agents or servants or subcontractors who are directly responsible to CONTRACTOR, excluding SUBCONTRACTOR herein."

Following completion of the project, the owner made a number of claims against Golden, including a claim that the tile work was defective. Golden settled the claims made by the owner and demanded indemnity from the subcontractors whose work had given rise to the claim. With the exception of Dale, each of the subcontractors upon whom Golden made a demand eventually provided indemnity.

Golden filed an indemnity action against Dale in which it sought reimbursement for the $12,000 it had paid the owner on the owner's tile claim as

well as a portion of the attorney fees it had incurred in defending the owner's claim.

At trial of Golden's indemnity action, Dale stipulated that the amount Golden had paid the owner on the tile claim was reasonable. The jury was asked to determine whether Dale had been negligent in performing work on the project and whether Golden had been negligent. The jury found that neither Dale nor Golden had been negligent. Following return of the jury's verdict, the trial court entered judgment in favor of Golden. The judgment included the $12,000 Golden had paid the owner, a portion of the attorney fees Golden had incurred in defending the owner's action and the attorney fees Golden had incurred in prosecuting the indemnity action.

Dale filed a timely notice of appeal.

## ISSUES ON APPEAL

In its principal argument on appeal, Dale argues that it was not required to indemnify Golden in the absence of some showing that it had been negligent. Because the jury found that it was not negligent, it believes judgment should have been entered in its favor. Dale also argues the trial court erred in instructing the jury that Dale bore the burden of proving that the owner's claim arose out of Golden's sole negligence or wilfull misconduct.

## DISCUSSION

### I

▮ "[W]here, as here, the trial court construed the indemnity provision at issue without the aid of extrinsic evidence the interpretation of this provision is a question of law subject to our de novo review. [Citation.]" (*Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 504 [61 Cal.Rptr.2d 668] (*Continental Heller*).)

▮ "[T]he question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 633 [119 Cal.Rptr. 449, 532 P.2d 97] (*Rossmoor*).)

"The intention of the parties is to be ascertained from the 'clear and explicit' language of the contract. [Citation.] And, unless given some special

meaning by the parties, the words of a contract are to be understood in their 'ordinary and popular sense.' [Citation.] [¶] 'In interpreting an express indemnity agreement, the courts look first to the words of the contract to determine the intended scope of the indemnity agreement.' [Citation.]" (*Continental Heller, supra,* 53 Cal.App.4th at p. 504.)

As we have set forth, by way of the subcontract, Dale promised to indemnify Golden "with respect to all work which is covered by or incidental to this subcontract." In *Continental Heller* the court considered very similar language by which a subcontractor agreed to indemnify a contractor for any loss which " '*arises out of or is in any way connected* with the performance of work under this Subcontract.' " (*Continental Heller, supra,* 53 Cal.App.4th at p. 505.)

Like the trial court here, the trial court in *Continental Heller* found the subcontractor had not been at fault in performing the work which had given rise to third party claims against the general contractor. Nonetheless the court in *Continental Heller* found the broad language of indemnity did not require that the general contractor prove that the subcontractor bore any responsibility for those claims. (*Continental Heller, supra,* 53 Cal.App.4th at p. 505.) "There is no merit to [the subcontractor's] contention [that] every cause of action for indemnity requires a showing of fault on the part of the indemnitor. On the contrary, courts will enforce indemnity agreements even for losses caused by acts over which the indemnitor had no control. [Citation.] . . . The language of the agreement leaves no doubt the parties intended [the subcontractor] should indemnify [the general contractor] irrespective of whether [the general contractor's] loss arose by reason of [the subcontractor's] negligence or for any other reason except for the sole negligence or willful misconduct of [the general contractor]. [Citation.]" (*Ibid.*)[1] Thus the court found that the contract, like the one here, excluded indemnity only if the claim was caused by the sole negligence or willful misconduct of the general contractor. (53 Cal.App.4th at p. 505.)

Like the court in *Continental Heller,* we find that the language of the parties' contract imposes no requirement that Golden prove that Dale was

---

[1]Contrary to Dale's argument, nothing we said in *Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App.4th 425, 436 [29 Cal.Rptr.2d 413] (*Regan Roofing*), is inconsistent with the freedom of contract discussed in *Continental Heller.* In *Regan Roofing* we merely held that it was premature to decide whether a subcontractor could be required to contribute to the defense of a claim before either its fault had been established or any determination had been made that such a defense existed notwithstanding fault. We did not suggest that an agreement which required indemnity from a faultless indemnitor was in any manner improper or unusual.

negligent. We recognize that such an allocation of risk to an indemnitor requires some expression in the agreement which indicates that "the *indemnitor's* conduct or fault is of no consequence in determining whether the indemnity obligation is triggered." (*Heppler v. J. M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1280 [87 Cal.Rptr.2d 497] (*Heppler*).) In *Continental Heller* that expression could be found in contract language by which the indemnity applied to " '. . . *any acts or omissions,* willful misconduct or negligent conduct, whether active or passive, on the part of the Subcontractor.' " (*Continental Heller, supra,* 53 Cal.App.4th at p. 505; see also *Heppler, supra,* 73 Cal.App.4th at p. 1280.) Here the expression of the subcontractor's agreement to provide indemnity in the absence of any fault is even clearer. The indemnity clause of the contract begins by providing that all work performed by Dale "shall be at the risk of SUBCONTRACTOR exclusively" and goes on to require indemnity for all claims covered by or incidental to the subcontract, even those which involve the "alleged or actual negligent act or omission" of the general contractor. More than the language considered in *Continental Heller,* the express and exclusive assumption by Dale of "the risk" attendant to its work on the project, including allegations of negligence, plainly contemplates more than the narrow risk of its own actual negligence or fault.[2] This language includes the obvious risk of unmeritorious claims made by third parties.

Importantly, this interpretation of the contract is consistent with the particular commercial setting in which it was executed. Golden was not, as was the case in *Heppler,* the builder of a large residential tract, which upon completion would be marketed to unknown consumers. In *Heppler,* the general contractor would, by virtue of its role as distributor to a large market, have both a unique ability to pass on the cost of defects to its customers and a unique liability to them. We found that the subcontractor, who had no such market access or liability, would not expect to be held accountable absent a showing of its negligence. (*Heppler, supra,* 73 Cal.App.4th at p. 1279.)

Here in contrast, Golden was acting as a general contractor on a single large commercial building. In addition to directly supervising its own employees and contracting with a number of other specialists with respect to the particular and unique requirements of the project, it had entered into a separate contractual relationship with the single owner of the project. Thus, unlike the mass producer of homes, it had no ability to pass the costs of its defects on to other customers and thus no liability in tort different from the

---

[2]No such express and broad assumption of risk appears in the indemnity contracts we considered in *Heppler.*

liability of its subcontractors. Moreover, as opposed to a subcontractor working on a large number of indistinguishable housing units, in this setting the subcontractors had a great deal more control over their own work and the impact of other subcontractors on it. Given the individual character of the project, the level of control exerted by subcontractors on such a project and the similar tort liability of general contractor and subcontractor, it was reasonable and in no sense surprising the general contractor would require that subcontractors, like the general contractor itself, contribute without regard to fault to the defense or settlement of claims made with respect to the subcontractor's work.

Not only is our interpretation of the agreement consistent with the commercial context in which it was made, our interpretation meets the requirements of public policy. (See *E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 507, fn. 6 [146 Cal.Rptr. 614, 579 P.2d 505]; Civ. Code, §§ 1668, 2773, 2782, 2784.5.) Because under the terms of the agreement indemnity only arises with respect to work covered by the contract, there must be some connection between the subcontractor's work and the claim. For instance, Dale would not be required to indemnify Golden simply because a plaintiff was standing on tile Dale had laid when another part of the building fell on the plaintiff. (Cf. *Continental Heller, supra,* 53 Cal.App.4th at p. 507 [indemnity provision valid where no indemnity without some "act" or "omission" by subcontractor].) Thus the contract did not require Dale to assume unlimited liability to Golden for all the work done by Golden and the other subcontractors. (*Ibid.*) Indeed, in addition to the requirement that any claim arise out of the subcontractor's work, as required by Civil Code section 2782, the agreement expressly relieved Dale of liability where the claim or loss arises out of the sole negligence or willful misconduct of Golden or its other subcontractors.

We are not persuaded by Dale's contention that the separate insurance and guarantee provisions of the subcontract somehow made the indemnity provisions ambiguous. Dale did not raise these essentially factual claims in the trial court and thus may not do so for first time on appeal. (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618 [74 Cal.Rptr.2d 101]; *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].) Moreover, as Golden points out, they lack any substantive merit. The separate insurance provisions, which required Dale to carry a liability policy, do indicate that the parties did not intend that the subcontract operate as an insurance contract. However, because Golden has never argued that it should be indemnified for its sole negligence, it has never argued that the contract is one of insurance. The separate guarantee

provisions, under which Dale's direct liability to Golden requires proof of defective workmanship, have no bearing on the indemnity provisions, which are designed to protect Golden from third party claims. (See *Somers v. United States F. & G. Co.* (1923) 191 Cal. 542, 547 [217 P. 746]; *Goodman v. Severin* (1969) 274 Cal.App.2d 885, 893 [79 Cal.Rptr. 555].)

In sum then, contrary to Dale's argument on appeal, Golden was not required to show that Dale was negligent.

## II

Under the contract as we have interpreted it, Golden was only required to show that the claim was connected to Dale's work and that it did not grow out of Golden's sole negligence or willful misconduct.

There has never been any dispute that the owner made a claim with respect to Dale's tile work and that the owner's claim was connected to Dale's work. However, as the plaintiff it was Golden's burden to prove all the other elements necessary to recover on its contract claim. (BAJI No. 2.60; Evid. Code, § 500.) Thus the trial court did err in instructing the jury that Dale bore the burden of showing the owner's claim arose out of the sole negligence or willful misconduct of Golden.

However, as Golden points out, this error was hardly prejudicial because Dale offered no evidence Golden was negligent and the expert witnesses offered by the parties on the issue testified that it had acted without fault. Thus we cannot conclude that on this issue, had the jury been properly instructed, a result more favorable to Dale would have been reached. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)

Judgment affirmed.

Huffman, J., and Nares, J., concurred.

A petition for a rehearing was denied March 28, 2000.