Filed 5/16/14  Hopper v. Lawyers Title Ins. Co. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| H. SAMUEL HOPPER,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>LAWYERS TITLE INSURANCE CORPORATION,<br><br>   Defendant and Respondent. | B245705<br><br>(Los Angeles County<br>Super. Ct. No. BC425646) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge.  Affirmed.

Excelus Law Group; LA Superlawyers, William W. Bloch; Law Office of Herbert Abrams and Herbert Abrams for Plaintiff and Appellant.

Fidelity National Law Group and Stephanie S. Bang for Defendant and Respondent.

Plaintiff and appellant H. Samuel Hopper purchased a title insurance policy from defendant and respondent Lawyers Title Insurance Corporation (Lawyers Title). As a condition of obtaining the policy, Hopper indemnified Lawyers Title against any claims, losses, damages, liabilities, and expenses incurred under the policy with regard to a third deed of trust. Pursuant to the indemnity agreement, which is the subject of this litigation, Hopper deposited $87,500 as collateral with Lawyers Title.

In this action for breach of the indemnity agreement, Hopper contends that Lawyers Title wrongfully refused to release his collateral after receiving evidence that allegedly showed the third deed of trust was unenforceable. Following a bench trial, the trial court entered a judgment of dismissal without prejudice to any future action that Hopper may bring to remove, satisfy, or discharge the third deed of trust. Lawyers Title was awarded its costs and attorney fees as the prevailing party.

In this appeal from the judgment,[1] Hopper contends the trial court erred in rejecting his claim for breach of contract and in awarding excessive attorney fees. For the reasons that follow, we reject Hopper's contentions and we affirm.

## BACKGROUND

In December 1988, Hopper purchased real property in Long Beach (property). In 1989, he encumbered the property with loans secured by: (1) a first deed of trust in favor of Fidelity Federal Savings and Loan; (2) a second deed of trust in favor of Transamerica Financial Services; and (3) a third deed of trust in favor of Citizens Thrift and Loan Association (Citizens).

In early 1996, Hopper defaulted on the loan secured by the third deed of trust. In July 1996, Citizens issued a notice of default. When Hopper failed to cure the default, Citizens sued Hopper for breach of contract. (*Citizens Thrift & Loan Assoc. v. Hopper*

---

[1] In a prior appeal, we reversed a judgment of dismissal entered after the trial court sustained a demurrer to the second amended complaint without leave to amend. (*Hopper v. Lawyers Title Insurance Corporation* (Oct. 21, 2011, B231344) [nonpub. opn.].)

(Super. Ct. L.A. County, 1997, No. BC158743) (*Citizens* action).) In March 1997, Citizens obtained a $39,765 default judgment against Hopper (default judgment), which has never been paid. Citizens, which later went out of business, never renewed the default judgment or reconveyed the third deed of trust.

Hopper contends the third deed of trust is unenforceable because, under the one action rule, Citizens waived its security interest by suing on the underlying debt without seeking to foreclose against the security. (Code Civ. Proc., § 726 [one action rule]; *Walker v. Community Bank* (1974) 10 Cal.3d 729, 733, fn. 1 [an independent action at law may not be maintained for a debt that is secured by a mortgage or deed of trust]; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 1004 [when a secured creditor sues only on the underlying debt without seeking to foreclose the security, it is barred by the one action rule from proceeding against the security in a subsequent action].) Hopper also contends the default judgment, which was never renewed, became unenforceable in March 2007, which was 10 years after the date of entry. (See Code Civ. Proc., § 683.020, subd. (a) [a money judgment may not be enforced "upon the expiration of 10 years after the date of entry"].)

In 2008, Hopper sought to refinance the property with a new lender. As a condition of issuing the loan, the new lender required that Hopper obtain a title insurance policy that would affirmatively insure against any claims, losses, damages, liabilities, and expenses incurred with regard to the third deed of trust. To satisfy the lender's requirement, Hopper applied for a title insurance policy from Lawyers Title.[2]

As a condition of issuing the title insurance policy, Lawyers Title required that Hopper sign the November 24, 2008 indemnity agreement that is the subject of this litigation. In that agreement, Hopper promised to indemnify Lawyers Title against any

---

[2]     During a preliminary title search, Lawyers Title discovered an assignment of the third deed of trust from Alaska Seaboard Partners Limited Partnership to Christiana Bank & Trust Company that was recorded on December 2, 2002. Hopper contends this assignment was recorded in error and was later corrected by the recording of an assignment of the third deed of trust by Christiana Bank to First Trust of California (First Trust).

claims, losses, damages, liabilities, and expenses incurred under the policy with regard to the third deed of trust. As required by the agreement, Hopper provided Lawyers Title with a deposit of $87,500 as collateral, which was to be used to defend or settle any claims based upon the third deed of trust.

The indemnity agreement expressly required Hopper to "take such action as in the opinion of Title Company is necessary to timely remove, satisfy or discharge the Exception [third deed of trust] prior to the Release Date, if any, set forth on page 3 hereof." "Release Date" was defined as "Upon receipt of payable demand."

On May 20, 2009, Hopper's attorney sent Lawyers Title a letter demanding the release of the $87,500 deposit. The letter stated that neither the default judgment, which was more than 10 years old, nor the security interest (third deed of trust) was enforceable. (Citing Civ. Code, §§ 2911, 880.250.)[3]

In October 2009, Glenn Awerkamp of Lawyers Title refused to release the deposit. Awerkamp referred to a purported assignment of the third deed of trust to First Trust. (In August 1996, a master assignment from Citizens to First Trust was recorded, which purportedly assigned the third deed of trust to First Trust.) Based on evidence that Citizens assigned the third deed of trust to First Trust *before* it obtained the default judgment in March 1997, Awerkamp inquired whether "First Trust assign[ed] the note back to Citizens[.] If not, and if [Hopper] did not pay the debt (which is pretty obvious), the [third trust deed] is alive and well even though the lender seems not to know it.

---

**3**      Civil Code section 2911 provides in relevant part: "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, . . . [¶] 1. An action can be brought upon the principal obligation . . . ."

Civil Code section 880.250 provides: "(a) The times prescribed in this title for expiration or expiration of record of an interest in real property or for enforcement, for bringing an action, or for doing any other required act are absolute and apply notwithstanding any disability or lack of knowledge of any person or any provisions for tolling a statute of limitation and notwithstanding any longer time applicable pursuant to any statute of limitation. [¶] (b) Nothing in this title extends the period for enforcement, for bringing an action, or for doing any other required act, or revives an interest in real property that expires and is unenforceable, pursuant to any applicable statute of limitation."

4

Unless the [third trust deed] was assigned back to Citizens, I think [Hopper] needs to get a [Civil Code section] 2941.7 bond in order to eliminate the [third trust deed]."[4]

Hopper chose not to obtain a bond under Civil Code section 2941.7. In November 2009, Hopper filed the present breach of contract action against Lawyers Title, seeking the immediate return of his collateral.

At trial, Awerkamp testified that Hopper had failed to utilize any of the following methods of showing the third deed of trust was unenforceable: (1) obtaining a reconveyance of the third deed of trust; (2) showing that Citizens's assignment of the third deed of trust to First Trust was invalid; (3) showing that First Trust had assigned the third deed of trust back to Citizens before the default judgment was entered; (4) posting a bond under Civil Code section 2941.7; (5) prosecuting a quiet title action; (6) obtaining an underwriting decision to ignore the third deed of trust; or (7) showing that the statute of limitations had expired.

As to the statute of limitations, Lawyers Title took the position that the limitations period under Civil Code section 882.020 would expire in "June of 2014," which would

---

[4] Civil Code section 2941.7 provides in relevant part that where "a specified balance, including principal and interest, remains due and the . . . trustor or the . . . trustor's successor in interest cannot, after diligent search, locate the . . . beneficiary of record, the lien of any . . . deed of trust shall be released when the . . . trustor or the . . . trustor's successor in interest records or causes to be recorded, in the office of the county recorder of the county in which the encumbered property is located, a corporate bond accompanied by a declaration, as specified in subdivision (b), and with respect to a deed of trust, a reconveyance as hereinafter provided."

Subdivision (a) of Civil Code section 2941.7 requires the posting of a corporate bond "in a sum equal to the greater of either (1) two times the amount of the original obligation secured by the . . . deed of trust and any additional principal amounts, including advances, shown in any recorded amendment thereto, or (2) one-half of the total amount computed pursuant to (1) and any accrued interest on such amount, and shall be conditioned for payment of any sum which the . . . beneficiary may recover in an action on the obligation secured by the . . . deed of trust, with costs of suit and reasonable attorneys' fees." Subdivision (f)(4) provides that the "corporate bond required in subdivision (a) is for a period of five or more years."

5

entitle Hopper to the release of the collateral at that time.[5]  Hopper did not disagree with the June 2014 date, but his lawyer argued that Hopper should not "have to wait until June 2014," because nothing was "going to change.  Lightning is not going to strike.  There's no evidence that the note is in anybody's possession, whether HUD has it or doesn't have it, there's no evidence of that.  So Lawyers Title should have conceded, paid the money back and not made Dr. Hopper go to these lengths; going to the Court of Appeal, litigating this, going to trial, he should have gotten his money back long ago.  He had to sue for it, we're entitled to judgment."

In order to show what he claimed to be the equivalent of a reconveyance of the third deed of trust, Hopper submitted a "Quit Claim Discharge of Mortgage" that was recorded by First Trust's successor, U.S. Bank, on August 30, 2012.  Through this recorded document, Hopper claimed to have acquired the interests, if any, of First Trust or U.S. Bank in the third deed of trust, which he equated with a reconveyance that would entitle him to the immediate release of the collateral.

Lawyers Title disagreed, however, that a quitclaim is the equivalent of a reconveyance of a deed of trust.  Awerkamp testified that the proper method of reconveying a deed of trust is to record a reconveyance of that deed of trust, which had not occurred in this case.

---

[5]     Civil Code section 882.020, subdivision (a)(1) states:  "(a) Unless the lien of a mortgage, deed of trust, or other instrument that creates a security interest of record in real property to secure a debt or other obligation has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale exercised, or any other means asserted after, the later of the following times:  [¶]  (1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the recorded evidence of indebtedness, 10 years after that date."

In its respondent's brief, Lawyers Title explains:  "The Citizens Trust Deed indicates that the final maturity date is June 7, 2004.  Therefore under the Ancient Documents statute [(Civ. Code, § 882.020)], the limitation for any enforcement of the Citizens Trust Deed, including a power of sale, expires on June 7, 2014, unless extended by the recordation of a notice of intent pursuant to Civil Code § 882.020(a)(3)."

6

At the conclusion of the bench trial, which lasted less than eight hours, the trial court issued an oral statement of decision in favor of Lawyers Title. The trial court found that: (1) when the parties entered into the indemnity agreement, they intended that Hopper would "pay off the loan" or affirmatively "do something" to extinguish the third deed of trust; (2) Lawyers Title had no obligation to "make an exception" to the third deed of trust or to "overlook" the third deed of trust; (3) although a deed of trust may be eliminated by paying off a loan or filing a quiet title action, Hopper failed to do either in this case; (4) the court would not "speculate" as to the validity of Citizens's purported assignment of the third deed of trust to First Trust; and (5) Hopper failed to meet his contractual burden of removing, satisfying, or discharging the third deed of trust.

Lawyers Title requested its attorney fees of $31,566, which was supported by the declaration of its attorney, Stephanie Bang. Hopper objected that Bang's declaration lacked foundation and contained inadmissible hearsay with regard to the work performed by attorneys Douglas Stern and James Hazlehurst, who did not provide supporting declarations. Following a hearing on the attorney fee motion, which was not transcribed, the court granted the motion in full.

A judgment of dismissal was entered without prejudice as to Hopper's right to file a future quiet title action or to take any other steps necessary to remove, satisfy, or discharge the third deed of trust. The court awarded Lawyers Title $1,942.40 in costs and $31,566 in attorney fees. This timely appeal followed.[6]

## DISCUSSION

### I.    Standard of Review

"Indemnity agreements are construed under the same rules which govern the interpretation of other contracts. (*Myers Building Industries, Ltd. v. Interface*

---

[6]    We denied Hopper's motion to take judicial notice of a grant deed dated March 12, 2013, and a deed of trust dated May 29, 2013. Both documents were dated after the trial in this case was concluded in 2012.

7

*Technology, Inc.* (1993) 13 Cal.App.4th 949, 969.) Accordingly, the contract must be interpreted so as to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) The intention of the parties is to be ascertained from the 'clear and explicit' language of the contract. (Civ. Code, §§ 1638-1639.) And, unless given some special meaning by the parties, the words of a contract are to be understood in their 'ordinary and popular sense.' (Civ. Code, § 1644.) [¶] 'In interpreting an express indemnity agreement, the courts look first to the words of the contract to determine the intended scope of the indemnity agreement.' (*Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co*. (1991) 234 Cal.App.3d 1724, 1737.)" (*Continental Heller Corp. v. Amtech Mechanical Services, Inc*. (1991) 53 Cal.App.4th 500, 504.)

"The proper standard of review of the trial court's interpretation of a contract depends on whether conflicting extrinsic evidence was admitted to interpret the document: 'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)" (*City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 382-383.)

## II.     The Trial Court Did Not Err in Interpreting the Indemnity Agreement

The indemnity agreement contained the following language, which Hopper refers to as "satisfaction" language: "Indemnitor shall take such action as in the opinion of Title Company is necessary to timely remove, satisfy or discharge the Exception prior to the Release Date, if any, set forth on page 3 hereof."

The trial court construed the "satisfaction" language to require the removal, satisfaction, or discharge of the third deed of trust before the collateral would be returned. As the trial court put it, the indemnity agreement placed the burden on Hopper "to cure the defect before the pledge money would be returned." After declining to "speculate as to whether or not [the] assignments [of the third deed of trust] were valid or invalid," the trial court stated that "the burden is on the plaintiff to cure this defect and . . . a quiet title

8

action under these facts would have been and perhaps still is the way to deal with it to get this off of record."

Based on the above statement, Hopper argues the trial court erroneously limited him to a single method of curing the defect—by filing "a quiet title action (and no other method)." He argues that by imposing this limitation, the trial court erroneously interpreted "the 'satisfaction' language in the contract" in a way that "conflicts with settled California law." He asserts that through its erroneous interpretation of the "satisfaction" language, the trial court gave Lawyers Title the "unbridled discretion" to determine whether the defect was cured.

Hopper contends the court allowed Lawyers Title to withhold the collateral based on its purely subjective or capricious preference as to the manner in which the third deed of trust is to be cleared from title. The record, however, shows that Lawyers Title applied an objective standard in refusing to release the collateral. Lawyers Title refused to release the collateral based on objective factors—the statute of limitations will not expire until June 7, 2014 (Civ. Code, § 882.020, subd. (a)(1)), there was no reconveyance of the third deed of trust, and there was no posting of a bond under Civil Code section 2941.7— that were undisputed at trial. Although Hopper contends in his opening brief that the statute of limitations had expired in 2002 (citing Cal. U. Com. Code, § 3118, subd. (a)), he did not make that argument below. In any event, Hopper concedes in his reply brief that the statute of limitations will not expire until June 2014.

The primary factual dispute, both at trial and on appeal, concerns the validity of Citizens's purported assignment of the third deed of trust to First Trust. When the trial court stated that it would not speculate on the validity of that assignment, it implicitly found the evidence was inconclusive and, therefore, Lawyers Title was justified in refusing to release the collateral based on such uncertain evidence. The record supports this implied factual finding. On the one hand, there was evidence—the declaration by Katherine Sebeck and the lack of any notice to Hopper of an assignment of the Citizens note—that the purported assignment to First Trust either did not occur or might have

9

been reversed by an unrecorded transfer of the deed of trust back to Citizens.[7] On the other hand, there was evidence—the master assignment that was recorded in August 1996—that the deed of trust was transferred to First Trust before the default judgment was entered against Hopper, which cast doubt on Sebeck's declaration regarding the ownership of the note. In either case, the uncertainty supported Lawyers Title's refusal to release the collateral.

Although the record shows that the trial court endorsed the quiet title action as an appropriate method of eliminating the third deed of trust from title, we disagree that the court selected the quiet title method as the *sole* method of curing the defect. The record, fairly construed, indicates that the trial court was simply endorsing the quiet title action as one way of clearing title. Our determination is supported by the fact that the judgment was entered without prejudice to Hopper's right to bring a quiet title action or take "any actions necessary to remove, satisfy or discharge the said deed of trust." If the trial court had intended to limit Hopper's options as he contends, it would have omitted the language allowing him to take "any actions necessary to remove, satisfy or discharge the said deed of trust." By its express terms, the judgment entitles Hopper to the release of the collateral through other methods, which includes the anticipated expiration of the statute of limitations in June 2014.

## III.    The Attorney Fee Award

Hopper contends the attorney fee award must be reduced by $13,026, which represents the work performed by attorneys Stern and Hazlehurst, who did not provide declarations in support of Lawyers Title's fee request. Lawyers Title disagrees. Lawyers

---

[7]    In the *Citizens* action, Sebeck, an employee of Citizens, filed a January 13, 1997 declaration stating that Citizens was the lawful owner of the promissory note and beneficiary of the third deed of trust. Assuming Sebeck's declaration was true, it is reasonable to infer that the purported assignment to First Trust (via the master assignment recorded in August 1996) either was invalid or was reversed by an assignment back to Citizens.

Title argues to affirm the fee award because it was properly supported by the declaration of attorney Bang, which was admissible under Evidence Code section 1222.

Evidence Code section 1222 provides that: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement; and [¶] (b) The evidence is offered either after admission of evidence sufficient to sustain a finding of such authority or, in the court's discretion as to the order of proof, subject to the admission of such evidence."

In her declaration, Bang stated in relevant part that: (1) before she became involved in this action in November 2011, her firm had filed three demurrers for Lawyers Title; (2) in the prior appeal (*Hopper v. Lawyers Title Insurance Corporation*, *supra*, B231344 [nonpub. opn.]) each party was ordered to bear its own costs, which means that Lawyers Title was not entitled to, and thus was not seeking, any fees incurred in the prior appeal; (3) she reviewed her firm's billing records and timesheets and determined that, excluding the prior appeal, Stern spent 20.4 hours (at a reduced in-house billing rate of $190 per hour) and Hazlehurst spent 76.25 hours (at a reduced in-house billing rate of $120 per hour) on the three demurrers, for a total of $3,876 and $9,150 respectively. Bang attested that the above fees were necessary and reasonable, given that, in light of their respective levels of experience, Stern would have commanded a billing rate of at least $380 per hour and Hazlehurst of at least $240 per hour, if prevailing market rates had been applied.

"'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . . [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other

11

circumstances in the case.' (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.)" (*PLCM Group*, *Inc*. *v. Drexler* (2000) 22 Cal.4th 1084, 1096.)

In this case, the trial court properly exercised its discretion, both in accepting Bang's declaration and in determining the value of the professional services provided in connection with the three demurrers that preceded the prior appeal. We find no error.

## DISPOSITION

The judgment and award of attorney fees is affirmed. Lawyers Title is entitled to recover its costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, J.[*]

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.