Filed 4/13/26  Truong v. Icon West CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENT TRUONG, | B327333 |
| Plaintiff, | (Los Angeles County Super. Ct. No. BC665309) |
| v. | |
| ICON WEST, Inc., et al., | |
| Defendants, Cross-complainants, Cross-defendants and Appellants. | |

APPEALS from orders and judgments of the Superior Court of Los Angeles County, Elaine J. Mandel, Daniel J. Buckley, and Stuart M. Rice, Judges.  Reversed and remanded.

No appearance for Plaintiff.

Greines, Martin, Stein & Richland, Robin Meadow and Tina Kuang for Defendant, Cross-complainant, Cross-defendant and Appellant Icon West, Inc.

Saxe Doernberger & Vita, William S. Bennett, Kathryn D. Kellner, Eric M. Clarkson; Noon & Associates, Timothy S. Noon and Julia M. Dalzell for Defendant, Cross-complainant, Cross-defendant and Appellant KONE, Inc.

——————————————

The Regents of the University of California (the Regents) contracted with Icon West, Inc. (Icon West) for the repair and refurbishment of a UCLA residence hall.  Icon West subcontracted the modernization of the building's elevators to KONE, Inc. (KONE).  Years after the work was completed, Kent Truong, a teenager attending a sports camp at UCLA, was seriously injured when the elevator malfunctioned due to a defect in the elevator's controller.  Truong sued.  The Regents, Icon West, and KONE settled with Truong, and the trial court found that none had been negligent.

This appeal concerns the parties' claims against one another for contractual indemnity and defense.[1]  The material facts are undisputed and the appeal presents issues of contractual interpretation.  Because we reverse and remand for further proceedings consistent with this opinion, we do not reach the issues raised in KONE's cross-appeal.

---

[1]     While this appeal was pending, the Regents and Icon West settled.  The Regents assigned their defense and indemnity claims against KONE to Icon West.  This court granted the Regents and Icon West's joint motion to substitute Icon West for the Regents.

2

## FACTUAL AND PROCEDURAL BACKGROUND
### *Modernization project and related contracts[2]*

In 2010, the Regents hired Icon West as the general contractor for a project to repair and refurbish a UCLA residence hall. The project called for the modernization of four elevators. The contract between the Regents and Icon West (the prime contract) required that a Motion Control Engineering (MCE) controller or its equal be installed in the elevators. The prime contract also set forth required standards for the parts used in the elevator modernization project.

The prime contract contained a section governing "subcontractual relations." It provided that any subcontract must require the subcontractor to be bound to the contractor by the terms of the prime contract with respect to the work performed, and to assume toward the contractor all obligations the contractor assumed toward the Regents pursuant to the prime contract.

Icon West subcontracted the elevator modernization project to KONE. Icon West agreed to pay KONE $642,912 for the work. The subcontract expressly incorporated the prime contract by reference and stated that KONE agreed to be bound to Icon West "in the same manner and to the same extent" that Icon West was bound to the Regents under the prime contract. The subcontract also contained provisions requiring KONE to indemnify and defend the Regents and Icon West from all claims arising out of the work to be performed under the subcontract, including claims of personal injury caused or alleged to be caused by any act or

---

[2] We briefly describe the relevant provisions of the contracts here for context. We quote them below in their entirety when addressing the parties' arguments.

3

omission by KONE. The provisions extended to claims asserted after the termination of the subcontract. The subcontract further provided that KONE warranted to the Regents and Icon West that all materials and equipment it furnished would be free from defects and would conform to the prime contract and industry standards.

Icon West and KONE also executed a rider to the subcontract. The rider "clarified" that KONE's duty to indemnify and defend Icon West "for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence" of Icon West and KONE would apply only "to the extent of" KONE's negligence.

The rider also added KONE's bid letter to the subcontract as a "contract document." The bid letter contained a "special offer," which provided that, if Icon West accepted KONE's "standard maintenance program . . . with [its] standard maintenance contract in lieu of the maintenance requirements outlined in the specification," Icon West would pay reduced maintenance costs as compared to KONE's bid price.

Icon West and KONE entered into a contract for KONE to provide maintenance for the existing elevators, prior to completion of the modernization project. The pricing was consistent with the terms of the special offer in the bid letter. The maintenance agreement also contained an indemnity provision, which provided that Icon West would indemnify and defend KONE from and against claims asserted against KONE arising out of services performed under the maintenance agreement "or the use or operation of the equipment unless such act arose out of negligence or intentional misconduct of KONE." The agreement provided for an initial term of one year, which

4

would automatically renew for successive one-year terms.  The contract would terminate upon written notice by either party.  Neither party provided written notice of cancellation of the maintenance agreement.

KONE completed the elevator work in August 2011, and the state issued operating permits.  The last time KONE performed maintenance on the elevators was in July 2012.

***Elevator malfunction and resulting lawsuit***

In July 2015, Truong was staying in the renovated residence hall while attending a sports camp at UCLA.  One evening, he rode the elevator down to the lobby with 21 other passengers.  While Truong was leaving the elevator, it descended without warning, pinning him between the ceiling of the elevator and the lobby floor.  Truong sustained serious injuries.

A state investigation concluded the accident was caused in part by a software issue in the MCE controller, which resulted in the controller failing to recognize the unintended movement of the car after the operating brake failed to hold the elevator at the lobby floor.[3]

---

[3]     The investigation report explained: "When the elevator continued to move in the down direction, sliding through the operating brake and out of door zone, the required unintended car movement protection system should have activated the emergency brake (Rope Gripper), stopping the car within 48 inches of the floor."  The report also concluded that the accident could have been avoided if the elevator had not been overloaded and if the brake had been maintained to hold 125 percent of its rated load.  A test of the operating brake of the elevator revealed that it was unable to hold even 100 percent of its rated load at the time of the accident.

In 2017, Truong filed this action. The operative first amended complaint alleged causes of action against the Regents for common-carrier negligence and dangerous condition of public property. It asserted causes of action for negligence, negligent products liability, and strict products liability against Icon West, KONE, and Nidec, the successor to MCE, the controller manufacturer.

The Regents filed cross-complaints against KONE and Icon West, asserting causes of action for breach of contract, express indemnity, equitable indemnity, implied indemnity, and comparative indemnity. Icon West filed a cross-complaint against KONE and Nidec, asserting causes of action for implied indemnity, equitable comparative indemnity, and express indemnity. KONE filed a cross-complaint against the Regents seeking indemnification and apportionment of fault. The parties represent that KONE similarly cross-complained against Icon West.[4]

### KONE's settlement with Truong

KONE settled with Truong for $100,000 and moved for a good faith settlement determination. The trial court granted the motion. Based on its review of the parties' motions for summary judgment and/or adjudication, the court found there was no "meaningful or compelling evidence of KONE's negligence."

---

[4] KONE's form cross-complaint identified only the Regents and Nidec as cross-defendants but stated that additional defendants were identified in an attachment that is not part of the record on appeal.

***The Regents' and KONE's competing motions for summary adjudication***

The Regents sought summary adjudication of the issue of KONE's duty to defend. The Regents argued they were third party beneficiaries of the subcontract, which required KONE to defend and indemnify them against Truong's claims. The Regents had tendered a defense to KONE, which KONE did not accept.

KONE opposed the motion on the ground that Civil Code section 2782, subdivision (b), barred the Regents from invoking the indemnity provision in the subcontract.[5] Section 2782, subdivision (b), voids clauses in contracts that relieve public agencies from liability for their active negligence. KONE also argued that it was excused from defending and indemnifying the Regents because, under the subcontract, it had no defense or indemnity obligations for claims arising out of "defects in design." KONE argued that Truong alleged defective design and manufacture with respect to the elevator. KONE asserted it had no discretion "as to the specifications for and design of work to be performed" under the subcontract, and it could not substitute alternative materials without approval. KONE further contended it had proposed that Icon West use a different controller for the elevator project, but the proposal was rejected.

KONE separately filed a summary adjudication motion, asking, in part, that the trial court find that KONE had no duty

---

[5]     Undesignated statutory references are to the Civil Code.

7

to defend or indemnify the Regents.[6]  At the hearing on the motions, KONE asserted that the court should not adjudicate the Regents' claims for defense and indemnity before determining the parties' liability, as the Regents were seeking indemnity from both KONE and Icon West and the defense and indemnity obligation to the Regents would need to be allocated between them based on their liability.

The trial court granted KONE's motion for summary adjudication and denied the Regents' motion.  The court concluded that language in the subcontract's indemnity provision requiring KONE to indemnify the Regents " 'regardless of any active and/or passive negligent act or omission of [the Regents]' " was unlawful under section 2782, subdivision (b).  It also observed that the rider to the subcontract stated that KONE shall " 'not be obligated to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Contractor or their Agents,' " and KONE's duty to defend and indemnify the Owner or Contractor applied only " 'to the extent of negligence of [KONE].' "  The court concluded that, "[t]aken together, these terms mean KONE is only responsible for indemnification to the extent it was negligent in installation and/or maintenance of the elevator."  Because it had "previously found that there was no significant evidence that KONE acted negligently," the court concluded that KONE had no obligation to defend or indemnify the Regents.

---

[6]     KONE's motion and amended motion directed the trial court to arguments made in "its contemporaneously-filed 'indemnity' motion," yet no such motion appears in the appellate record or trial court case register.

8

***Icon West's and KONE's competing motions for summary judgment or summary adjudication***

Icon West moved for summary adjudication of its express contractual indemnity cause of action against KONE on the ground that KONE owed it a defense and indemnity under the subcontract regardless of whether KONE was found to be negligent. In opposition, KONE argued that the clause in the rider to the subcontract concerning its defense and indemnification obligations with respect to "concurrent negligence" required that it be found negligent before it was obligated to indemnify and defend Icon West.

KONE also moved for summary judgment or adjudication against Icon West, arguing that Icon West owed an immediate duty to defend KONE pursuant to the maintenance agreement. KONE asserted that the indemnity provision in the subcontract did not control because it only required KONE to indemnify Icon West for claims arising out of or in connection with KONE's scope of work. KONE also argued that, pursuant to the rider to the subcontract, KONE was only required to indemnify Icon West to the extent KONE was negligent.

The trial court denied Icon West's motion for summary adjudication on the ground that Icon West's arguments were "essentially identical to the arguments in connection with the Regents' motion." The court also rejected Icon West's contentions that KONE's duty to defend was broader than its duty to indemnify and that KONE was required to provide a defense upon tender, even if it was not determined to be negligent. The court concluded that, under the rider, KONE was only required to defend and indemnify Icon West if KONE was negligent. Since the court had determined there was "insufficient evidence of

9

KONE's negligence" when it decided KONE's good faith settlement motion, it ruled that "KONE has no contractual duty to defend."[7]

The trial court also denied KONE's motion against Icon West. The court found a triable issue of fact existed as to whether the indemnity provision in the subcontract or the maintenance agreement governed.

### Additional settlements with Truong and jury trial

Icon West settled with Truong for $50,000 and moved for a good faith settlement determination. The trial court granted the motion and found that Icon West did not face any liability for the accident based on the evidence that had been presented.

Truong's claims against the Regents and Nidec proceeded to a jury trial. During jury selection, Nidec's counsel admitted there was an error in the MCE controller's software and conceded liability.[8]

Shortly after the trial began, Nidec and the Regents settled with Truong for $5 million each. The trial court granted the Regents' and Nidec's motions for determination of good faith settlement.

### Bench trials

The trial court held a bench trial to determine whether Icon West was required to indemnify KONE pursuant to the maintenance agreement. It concluded that the subcontract incorporated the maintenance agreement and the indemnity

---

[7]     Icon West later challenged the procedural propriety of this ruling, as KONE had not moved for summary adjudication on that ground.

[8]     Nidec continued to argue, however, that it was not solely liable for Truong's damages.

10

provision in the maintenance agreement required Icon West to indemnify KONE.

The trial court conducted a second bench trial concerning Icon West's and the Regents' claims against one another. The court ruled that the indemnity provision in the prime contract required Icon West to indemnify the Regents. The trial court found that "[t]here has been no showing of active negligence" by the Regents and, "based on the evidence presented, that there was not passive negligence by the Regents."

Based on these rulings, the trial court entered judgment in favor of the Regents and KONE, and against Icon West, in the amount of the Regents' and KONE's settlements with Truong, plus attorney fees and pre-judgment interest on the settlement amounts. The court denied the Regents' and KONE's requests for pre-judgment interest on their attorney fees and costs.

Icon West moved to vacate and set aside the judgment. The court denied the motions. Icon West timely appealed. The Regents and KONE timely cross-appealed.

## DISCUSSION

Icon West contends the trial court erred in finding that KONE was not required to defend or indemnify Icon West or the Regents in the absence of KONE's negligence. In its cross-appeal, KONE contends the trial court erred in denying it prejudgment interest on its attorney fees and costs. Because we reverse the judgments in favor of KONE, we do not reach KONE's cross-appeal.

## I. Standard of Review and Principles of Contract Interpretation

Icon West's appeal turns on issues of contractual interpretation. " 'It is solely a judicial function to interpret a

11

written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence.' [Citation.]" (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527.) In other words, the resolution of contractual ambiguities presents "a question of law if no parol evidence is admitted or if the parol evidence is not in conflict." (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 (*WYDA*).) We are not bound by the trial court's contract interpretations and decide the issues de novo. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 847.)

"When considering a question of contractual interpretation, we apply the following rules. 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' ([Civ. Code,] § 1636.) 'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.' ([Civ. Code,] § 1638.) 'When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . .' ([Civ. Code,] § 1639.)" (*WYDA, supra*, 42 Cal.App.4th at p. 1709.)

## II. The Trial Court Erred in Concluding that KONE Had No Defense or Indemnity Obligations if It Was Not Negligent

Icon West contends the trial court incorrectly concluded that KONE was not required to defend and indemnify Icon West or the Regents in the absence of a finding that KONE was negligent. Icon West argues that the rider to the subcontract limited KONE's duty to defend and indemnify Icon West to the

12

extent of KONE's negligence only when there is a determination that both Icon West and KONE were negligent.

Although Icon West concedes that the provision of the subcontract requiring KONE to indemnify the Regents for their "active negligence" is unenforceable under section 2782, subdivision (b), it contends that fact does not support the trial court's conclusion that KONE is only required to indemnify the Regents to the extent KONE was negligent. Icon West argues the indemnity provision was otherwise fully enforceable.

Finally, Icon West argues that because it is undisputed that Icon West was not negligent, or alleged to be solely negligent, the court erred in relying on a subcontract provision excusing KONE from any obligation to indemnify the Regents or Icon West " 'for Claims arising from the sole negligence or willful misconduct of Contractor or their Agents.' "

KONE does not seek to justify the trial court's ruling on the third ground. However, KONE argues that the limitation of its indemnity and defense obligations in the rider did not expressly require a finding of concurrent negligence, and it instead applies when concurrent negligence is *alleged*. KONE also argues that the language in the subcontract's indemnity provision that violated section 2782, subdivision (b), cannot be severed and renders the entire indemnity provision unenforceable.

KONE further argues that the trial court's rulings were correct on a third ground upon which the trial court did not rely: KONE was not obligated to indemnify the Regents or Icon West "for defects in design furnished by such persons." KONE contends the prime contract's specification of the MCE controller was such a defect in design. Icon West argues that the Regents did not furnish a defective design because the prime contract

13

specified, but did not require the use of, the MCE controller, and it placed the burden on KONE to ensure that the products used in the modernization project were of good quality and met the standards set forth in the prime contract.

We consider the parties' arguments below.

**A.  The subcontract's indemnity provision requires KONE to indemnify Icon West and the Regents regardless of KONE's fault**

Icon West argues—and KONE does not meaningfully dispute—that the subcontract's indemnity provision required KONE to defend and indemnify Icon West and the Regents as an express third-party beneficiary, even in the absence of any negligence on KONE's part.

The subcontract's indemnity section stated that, "[w]ith the exception that this [indemnity provision] shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the public policy of the State of California, Subcontractor shall indemnify and save harmless Owner and Contractor . . . of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity, of every kind and nature whatsoever ('Claims') arising out of or in connection with Subcontractor's Scope of Work to be performed under this Subcontract for, but not limited to: [¶] (a) Personal injury, including, but not limited to, bodily injury, emotional injury, sickness or disease, or death to persons . . . caused or alleged to be caused in whole or in part by any act or omission of Subcontractor . . . regardless of whether such personal injury or damage is caused by a party indemnified hereunder."

14

It further provided: "The indemnification provisions of (a) through (g) above shall extend to Claims occurring after this Subcontract is terminated as well as while it is in force. Such indemnity provisions apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees. Subcontractor, however, shall not be obligated under this Subcontract to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Contractor . . . ."

Courts interpreting similar language have concluded that a subcontractor is required to indemnify a general contractor, regardless of the subcontractor's fault. For example, in *Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 504–505, the court concluded that an indemnity agreement that required the subcontractor "to indemnify [the general contractor] for a loss which '*arises out of or is in any way connected* with the performance of work under this Subcontract' " demonstrated the parties' intent that the subcontractor "should indemnify [the general contractor] irrespective of whether [its] loss arose by reason of [the subcontractor's] negligence or for any other reason except for the sole negligence or willful misconduct of [the general contractor]." The contractor was not required to prove the subcontractor's fault to establish its duty to defend and indemnify the contractor. Although the trial court found the subcontractor was not negligent and its work had not proximately caused the plaintiff's injuries, the subcontractor was still required to indemnify the contractor for the amount it had paid in good faith settlement of the plaintiff's claims and defense costs.

15

Similarly, in *Centex Golden Construction Co. v. Dale Tile Co.* (2000) 78 Cal.App.4th 992, 997, the court concluded that the subcontractor's agreement to indemnify the general contractor " 'with respect to all work which is covered by or incidental to this subcontract,' " required the subcontractor to indemnify the general contractor even in the absence of any showing that the subcontractor was negligent. In *Centex*, a jury found neither the general contractor nor the subcontractor had been negligent. (*Id.* at p. 996.)

We therefore consider KONE's arguments that provisions of the subcontract, rider, or other contract documents rendered KONE's obligation to defend and indemnify Icon West or the Regents contingent on KONE being negligent, or that KONE's indemnification obligations were otherwise excused.

**B.    The trial court erred in concluding that the subcontract's rider limited KONE's duty to defend and indemnify Icon West and the Regents against claims of negligence**

To recap, the indemnification section of the subcontract required KONE to indemnify the Regents and Icon West from "any and all claims," "damages," losses or liability," "of every kind and nature whatsoever" "arising out of or in connection with" KONE's scope of work under the subcontract, including personal injury, regardless of whether the personal injury was caused by the Regents or Icon West, and regardless of whether the Regents or Icon West were actively or passively negligent. However, KONE was not obligated to indemnify the Regents or Icon West for claims arising from Icon West's sole negligence.

Section 9 of the rider to the subcontract (section 9), referenced the indemnification section in the subcontract and

16

"[a]dd[ed] the following as clarification, 'Subcontractor's duty to indemnify and defend Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of (a) Contractor or Contractor's agents or employees, and (b) Subcontractor or Subcontractor's employees, shall apply only to the extent of negligence of Subcontractor.' " The trial court determined that neither KONE nor Icon West was at fault for Truong's injuries, and neither party challenges these findings on appeal. KONE, however, asserts section 9 applied to limit, and, in this case, eliminate, any duty to defend or indemnify it otherwise had under the subcontract.

As an initial matter, we note that the trial court relied on section 9 when ruling that KONE had no obligation to indemnify the Regents. Icon West contends section 9 does not affect KONE's duty to indemnify the Regents, as the rider does not refer to "Owner" or the Regents. KONE does not dispute this point. We agree that the language in the rider did not modify or eliminate KONE's obligation to indemnify the Regents.

We further conclude that section 9 did not eliminate or limit KONE's obligation to defend and indemnify Icon West under the circumstances of this case.

"Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 (*Crawford*).) Our task is "to ascertain and declare what is in terms or in substance contained [in an instrument], not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858; *Duran v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 67.) "The

17

whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  (§ 1641.)

Section 9 addressed KONE's duty to indemnify and defend Icon West "for liability for damages" arising out of injury or damage "caused by or resulting from the concurrent negligence" of the contractor and the subcontractor.  KONE urges that section 9 meant that when concurrent negligence is *alleged*, KONE's indemnification and defense duties are limited to the extent of KONE's negligence.  Yet, while the subcontract specified KONE's indemnification obligation covered all "claims"—defined expansively—"caused or *alleged to be caused* in whole or in part by any act or omission of Subcontractor," section 9 of the rider described KONE's indemnification obligation "for liability for damages" for harms "caused by or resulting from the concurrent negligence" of the contractor and subcontractor.  KONE's interpretation would require that we read language into section 9 broadening its applicability to damages *alleged* to have been caused by or *alleged* to result from concurrent negligence, or that it relates to *claims* or *demands* for damages.

On the other hand, the terms "liability," "damages," and "the concurrent negligence" together suggest that KONE's duty to defend and indemnify Icon West is limited to the extent of KONE's negligence when there is a determination or finding that both Icon West and KONE were negligent.  (See *Hassell v. Bird* (2018) 5 Cal.5th 522, 573 (dis. opn. of Cuéllar, J.) ["commonly understood definition of 'liability' " is " 'pecuniary obligation[ ]' "; " 'being legally obligated or accountable' "; or " 'financial or pecuniary obligation in a specified amount' "]; *Watts Industries,*

*Inc. v. Zurich American Ins. Co.* (2004) 121 Cal.App.4th 1029, 1040 ["courts interpret 'damages' according to its ordinary and popular definition: a court-ordered monetary payment recovered by a party for loss or detriment it has suffered through the acts of another"].) A plaintiff asserting claims of negligence against multiple parties does not generally apportion fault between them. To limit KONE's indemnity obligation to the extent of its concurrent negligence, a factual determination of KONE's and Icon West's relative fault would be a prerequisite.

Considering the indemnity provision of the subcontract with the "clarification" in section 9 of the rider further supports the conclusion that section 9 applies only following a determination of concurrent negligence. (§ 1641.) The indemnity provision in the subcontract requires KONE to defend and indemnify Icon West, even in the absence of KONE's negligence, and even if Icon West was partially negligent. The subcontract's indemnification language is broad and explicit. Had the parties intended section 9 to relieve KONE of its duty to indemnify and defend Icon West whenever there were merely *allegations* of concurrent negligence, and neither Icon West nor KONE was ultimately determined to be at fault, they would have understood that similarly broad and explicit language was required. A provision limiting KONE's indemnity obligation based on allegations of concurrent negligence alone would significantly narrow the applicability of the subcontract's indemnity provision. Such a fundamental alteration of KONE's indemnity and defense obligations could not reasonably be deemed a "clarification."

Finally, to the extent there remains doubt as to the proper interpretation of section 9, we note that the rider was drafted by KONE, which conditioned acceptance of the subcontract on

19

acceptance of the rider.  Pursuant to general rules of contract interpretation, any uncertainty in section 9 should be interpreted most strongly against the party that caused the uncertainty to exist.  (§ 1654.)

KONE argues that "it would make no sense" to interpret section 9 as requiring a finding of concurrent negligence before the section's limitations applied because "it would eliminate any duty to defend."  Citing *Crawford*, *supra*, 44 Cal.4th 541, KONE contends that "[a] duty to defend commences during the pendency of a lawsuit if indemnity is potentially owed under the contracts terms [*sic*] before there is any finding at all, let alone a finding of negligence."

We disagree that this general principle aids in the interpretation of section 9.  Nothing in the text of section 9 suggests it was intended to supersede or entirely supplant the subcontract's indemnification provision.  Thus, a reasonable interpretation of the two agreements is that KONE's duty to defend under the subcontract would be triggered by any covered claim under the subcontract's indemnity provision, subject to recoupment of defense costs if section 9 of the rider ultimately applies.  Indeed, this is close to what KONE argued in the trial court in opposition to the Regents' motion for summary adjudication of KONE's duty to defend the Regents.  KONE asserted that any defense obligation could *not* be ascertained before a determination of the parties' liability.

We also note that the Supreme Court's analysis in *Crawford* relied on the specific language of the subcontract at issue, which required the subcontractor to indemnify the developer against defined claims for damage arising from the performance of the subcontract, but required the subcontractor to

20

*defend* the developer against " '*any suit or action . . . founded upon* the claim of such damage . . . .' " (*Crawford, supra*, 44 Cal.4th at p. 559.)  Our high court explained that "[n]ecessarily, a duty expressed in this manner did not require a final determination of the issues, including the issue of [the subcontractor's] negligence, before [the subcontractor] was required to mount and finance a defense on [the developer's] behalf." (*Ibid*.)

Section 9 did not distinguish between the duty to indemnify and the duty to defend in the manner of the subcontract at issue in *Crawford,* and the high court's analysis of that subcontract does not squarely apply here.  We further disagree that *Crawford* stands for the proposition that a defense obligation can never be conditioned on a determination of liability, even if the parties have contracted otherwise.  (*See Crawford, supra*, 44 Cal.4th at p. 565, fn. 12 [in dicta, finding deferral of determination of defense obligations until underlying litigation is complete "appropriate" where party sues one or more persons seeking to establish contractual right to defense against litigation not yet complete].)

Here, Icon West and KONE were not determined to be concurrently negligent.  Section 9 of the rider therefore did not apply.  Instead, the subcontract's indemnification provision controlled.  Under that provision, KONE was required to defend and indemnify Icon West and the Regents.

21

**C. The trial court erred in granting summary adjudication in KONE's favor based on the subcontract indemnity provision's violation of section 2782**

Subject to certain inapplicable exceptions, "provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract with a public agency entered into before January 1, 2013, that purport to impose on the contractor, or relieve the public agency from, liability for the active negligence of the public agency are void and unenforceable." (§ 2782, subd. (b)(1).)

The subcontract's indemnity provision stated that its provisions "apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees." Icon West does not dispute that the subcontract's indemnity provision is unenforceable under section 2782, subdivision (b), to the extent it requires KONE to indemnify the Regents for active negligence. However, Icon West argues that the trial court erroneously relied on the "active negligence" clause to conclude that KONE is only required to indemnify the Regents to the extent *KONE* was negligent. It further argues that the indemnity provision remains enforceable because it included prefatory language that the indemnification section should in "no event be construed to require indemnification by [KONE] to a greater extent than permitted under the public policy of the State of California." Icon West argues this preface "essentially excises" the language contrary to section 2782 from the subcontract.

We agree that neither the clause requiring KONE to indemnify the Regents "regardless of any active . . . negligent act or omission of Owner or Contractor," nor its invalidation

22

pursuant to section 2782, supports the conclusion that KONE was only required to indemnify the Regents if KONE was negligent. The offending clause did not address the effect that *KONE's* negligence or lack thereof has on its indemnity obligations. We also reject KONE's contention that this clause invalidates the subcontract's indemnity provision altogether.

Section 2782, subdivision (b)(1), voids clauses or provisions of construction contracts that relieve a public entity from liability for active negligence. It does not purport to void all indemnity obligations the party contracting with the public agency may have if this language appears in their agreement. KONE cites no support for its interpretation of "provision" as including the entire section in which the proscribed language appears.

Here, the parties' express intent was that the indemnity section should be construed to comply with the law and public policy of the State of California. Thus, while the indemnity section stated that its provisions "apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees," the prefatory language indicated that this provision should be construed in a limited way to apply regardless of any *passive* negligence of the Regents, and/or any active or passive negligence of Icon West.

Moreover, even if the prefatory language was insufficient to excise language that is expressly contrary to section 2782, subdivision (b), under general principles of contract interpretation, "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (§ 1599.) "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from

23

the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124.) "California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." (*Adair v. Stockton Unified School Dist.* (2008) 162 Cal.App.4th 1436, 1450.) Whether a contract is capable of being severed is reviewed de novo pursuant to established rules governing contract interpretation. (*Koenig v. Warner Unified School Dist.* (2019) 41 Cal.App.5th 43, 54 (*Koenig*).)

In this case, it is appropriate to sever the clause that would require KONE to indemnify the Regents regardless of the Regents' active negligence. *Templeton Development Corp. v. Superior Court* (2006) 144 Cal.App.4th 1073 (*Templeton*), is instructive. In *Templeton*, the court concluded that a contract provision requiring the parties to mediate any disputes in Nevada violated Code of Civil Procedure section 410.42, subdivision (a)(1).[9] (*Templeton*, at p. 1083.) However, the court rejected the petitioners' argument that the mediation provision of the parties' contract should be voided in its entirety. (*Id*. at p. 1084.) It concluded that the interests of justice were best served by severing only the portion of the mediation provision

---

[9] In relevant part, Code of Civil Procedure section 410.42, subdivision (a)(1), provides that, in a construction contract between a contractor and a subcontractor with principal offices in this state, "[a] provision which purports to require any dispute between the parties to be litigated, arbitrated, or otherwise determined outside this state" shall be void and unenforceable. The *Templeton* court held that this subdivision applies to mediations. (*Templeton*, *supra*, 144 Cal.App.4th at p. 1083.)

24

that violated the statute, since the offending provision was "clearly collateral to the main purpose of the subcontract agreement and [was] easily severed from the remainder of the provisions that deal with mediation." (*Ibid*.) Moreover, severing the offending provision "prevent[ed] petitioners from 'gaining undeserved benefit' as a result of voiding all the mediation provisions in favor of the arbitration requirements, 'particularly when there has been full or partial performance of the contract.' [Citation.]" (*Id*. at pp. 1084–1085.)

KONE argues that *Templeton* is distinguishable because it does not concern section 2782. Yet, it fails to explain why any differences between section 2782 and the statute in *Templeton* are material to our analysis. Both statutes provide that certain provisions in construction contracts are "void and unenforceable," raising the question of whether non-offending provisions in clauses that contain the proscribed language are also void. (See § 2782, subd. (b)(1); Code Civ. Proc., § 410.42, subd. (a).)

Here, as in *Templeton*, the offending language was collateral to the purpose of the subcontract, which was the modernization of the residence hall elevators. Further, as was the case in *Templeton*, KONE would receive an undeserved benefit if it were released from fulfilling its indemnity obligations to the Regents or Icon West. It is undisputed that KONE received the payment due to it under the subcontract. The subcontract provided that the indemnity provision applied to claims asserted after the agreement terminated. Invalidating the indemnity provision would deprive Icon West of a significant contractual benefit after it fully performed.

KONE contends that even if the language that expressly violated section 2782, subdivision (b), is severed, the indemnity

provision would still violate section 2782 because it requires KONE to "indemnify and save harmless Owner . . . of and from any and all claims." KONE argues that this broad language encompasses claims of active negligence. It purports to illustrate the argument by asserting that Truong alleged the Regents were actively negligent and the subcontract's "any and all claims" language would impermissibly have required KONE to *defend* the Regents against Truong's allegations of active negligence.

We disagree. In a similar context, our Supreme Court has rejected the argument that a general indemnity provision that does not expressly disclaim a void indemnification obligation is entirely unenforceable. (*Gonzales v. R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 809, fn. 8.) The appellant in *Gonzales*, a subcontractor, argued that an indemnity provision that required it to indemnify the general contractor " 'against all claims for damages to persons or to property growing out of the execution of the work' " was wholly void under section 2782, subdivision (a), which voids provisions purporting to indemnify a promisee against liability for damages arising from the promisee's sole negligence or willful misconduct. (*Gonzales*, at p. 807, fn. 7; see *id*. at p. 809, fn. 8.) The court found this contention to be "clearly without merit," and observed: "If it had been the intention of the Legislature, in passing section 2782, to nullify all general indemnity clauses not containing an express disclaimer of any right to indemnification for the promisee's sole negligence, we have no doubt that that intention would have been clearly stated." (*Id*. at p. 809, fn. 8.) The same reasoning applies to section 2782, subdivision (b).

We must also give effect to the limiting language of the indemnity provision when interpreting the meaning of "any and

26

all claims." (§ 1641.) Under the terms of the subcontract, KONE's obligation to indemnify the Regents for "any and all claims" cannot be construed as "requir[ing] indemnification . . . to a greater extent than permitted under the public policy of the State of California." KONE does not address this clause in its briefing on appeal. Further, while KONE asserts there is "clear precedent" establishing that it could not be required to defend the Regents to *any* extent if the plaintiff's claims included allegations that the Regents were actively negligent, it cites none.

Indeed, "the law implies in every indemnity contract, unless the contract provides to the contrary, the duty to defend claims which, at the time of tender, *allege* facts that would give rise to a claim of indemnity." (*City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, 249, citing *Crawford*, *supra*, 44 Cal.4th at p. 558; § 2778, subd. 4.) To the extent KONE contends that Truong's action against the Regents did not seek to impose liability on the Regents for the Regents' both active *and* passive negligence, we disagree.[10] The possibility that a trier of fact might determine that the Regents were actively negligent, and

---

[10] "Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [Citations.] Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 629.) The dangerous condition cause of action alleged that the Regents "breached their duty to maintain the elevator in a reasonably safe condition and warn of known or knowable dangers," which is consistent with nonfeasance.

thus not entitled to indemnity, did not excuse KONE from its defense obligations where the complaint "allege[d] facts which would, at least potentially, fall within the scope of the duty to indemnify." (*City of Bell*, at p. 251.)

We conclude the unlawful portion of the indemnity provision was capable of being severed from the remainder. Severance is warranted and consistent with the parties' expressed intent. (*Koenig*, *supra*, 41 Cal.App.5th at p. 56.)

> ### D. The "design defect" language does not excuse KONE from its indemnity and defense obligations

The subcontract's indemnity section provides that KONE is not obligated to indemnify the Regents or Icon West "for Claims arising from the sole negligence or willful misconduct of Contractor or [its] agents, employees or independent contractors who are directly responsible to Contractor, or for defects in design furnished by such persons."

KONE contends this provision limits its duty to defend and indemnify the Regents and Icon West because the MCE controller was defectively designed, the MCE controller was the sole cause of Truong's injuries, and the Regents and Icon West furnished the design with the defective MCE controller to KONE. Icon West contends: 1) the design defect exception does not apply to indemnity for third party claims; 2) the controller's defect was the result of manufacture, not design; 3) the Regents' design provided specifications that the MCE controller failed to meet; and 4) the trial court determined that there were no design defects when it rejected Icon West's contention that it could not be held liable or required to indemnify the Regents under *United States v. Spearin* (1918) 248 U.S. 132 (*Spearin*).

We need not reach most of these contentions.  We conclude that the latent software problem in the MCE controller was not a "defect[ ] in design furnished by" the Regents and Icon West under the plain meaning of "defect in design."

### i.      *Relevant Contract Provisions*

The prime contract provided: "Contractor warrants to University that all materials and equipment used in or incorporated into the Work will be of good quality, new, and free of liens, claims, and security interests of third parties; that the Work will be of good quality and free from defects; and that the Work will conform with the requirements of the Contract."

With respect to the elevator control system, the prime contract stated: "Non-Proprietary controls shall be provided from Motion Control Engineering, or equal, to match standardized controls used by the University.  [¶] a. Motion Control Engineering Model, Motion 4000 AC/VVVF."  It provided that "[a]ll work must be in accordance with the latest Applicable Code Requirements, including . . . [¶] a. ASME: American Society of Mechanical Engineers—A17.1-2004 . . . ."  Among other things, ASME A17.1 addresses protection from unintended car movement.  The prime contract further stated that "[s]pecification of a product, material or equipment by brand or trade name and model number is not a representation or warranty that the product, material or equipment can be used without modification, to meet the requirements of the plans and specifications; Contractor shall, at its sole cost, modify such

29

products, material, or equipment so that they comply with all requirements of the plans and specifications."[11]

The prime contract provided that "[a] product, material or equipment, other than the first-named product, material or equipment, specified by both brand or trade name and model number may be used if no revisions or modifications to the design or construction of the Work are necessitated by the use of the product, material or equipment." If revisions or modifications were necessary, the prime contract required them to be approved by the Regents in writing.

The subcontract stated that the primary contract documents "are incorporated in this Subcontract by reference, and insofar as they relate in any way, directly or indirectly, to the Work covered by this Subcontract. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, including, but not limited to, all applicable terms and provisions thereof."

As set forth above, the subcontract's indemnity section contained a limiting provision stating the subcontractor was not obligated to indemnify the owner or contractor for claims arising from "defects in design furnished by" the owner or contractor.

---

[11] The prime contract also provided: "When a product, material or equipment specified by brand or trade name is followed by the words 'or equal,' a substitution may be permitted if the substitution is equal to or superior to the first-named product, material or equipment in quality, utility and appearance, and if the substitution complies with all other requirements of the plans and specifications."

### ii. Analysis

Whether the defect in the MCE controller was a "defect in design furnished by" the Regents or Icon West under the subcontract is a question of law requiring our construction of the subcontract and application of that construction to the undisputed facts. (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 847 [application of law to undisputed facts ordinarily a legal question].)

To interpret undefined terms in a contract, we look to the "ordinary and popular" meaning of the words and we may consider statutory definitions. (§ 1644; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 825–826.) The relevant provision of the subcontract mirrors the language of section 2782, subdivision (a), which provides that "clauses . . . affecting any construction contract and that purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the sole negligence or willful misconduct of the promisee . . . , or for defects in design furnished by those persons, are against public policy and are void and unenforceable . . . ." For purposes of section 2782, "a 'design defect' is defined as a condition arising out of its design which renders a structure, item of equipment or machinery or any other similar object, movable or immovable, when constructed substantially in accordance with its design, inherently unfit, either wholly or in part, for its intended use or which impairs or renders the use of such structure, equipment, machinery or property dangerous." (§ 2784.)

Under this definition, the software error in the MCE controller was not a "defect in design furnished by" the Regents

31

or Icon West.  The design furnished in the prime contract required the use of a non-proprietary controller and compliance with certain standards of performance.  KONE does not claim the elevator was inherently unfit for its purpose or dangerous because the design required a non-proprietary controller, but because it purportedly required the use of the defective MCE controller.  However, the prime contract specified the MCE controller, *or its equivalent*.  This is a statutory requirement for public works projects.[12]  The prime contract thus did not, and could not, mandate the use of the MCE controller.  (Cf. *W.G. Yates & Sons Const. Co., Inc. v. U.S.* (Fed.Cl. 2002) 53 Fed.Cl. 83, 85 [specification of product, when accompanied with " 'or an approved equal,' " did not require or warrant the use of the specified product]; *Florida Bd. of Regents v. Mycon Corp.* (Fla.Dist.Ct.App. 1995) 651 So.2d 149, 153 ["contract provision calling for the quality of the product to be the equivalent of a specific manufactured product is a performance specification involving no implied warranty," not design specification " 'set[ting] forth in precise detail the materials to be employed' "].)  Indeed, the prime contract contained provisions governing substitutions of specified materials.

The prime contract further provided that the work must be performed in accordance with applicable code requirements.  Although the Regents' identification of the MCE controller

___

[12]     Public Contract Code section 3400, subdivision (b), provides that "specifications for bids, in connection with the construction, alteration, or repair of public works" may not "call[] for a designated material, product, thing, or service by specific brand or trade name unless the specification is followed by the words 'or equal' so that bidders may furnish any equal material, product, thing, or service."

indicated that it believed the controller would satisfy the contract's standards, the prime contract stated that identification of a product was not a warranty that the product could satisfy the requirements of the contract without modification.[13] The prime contract required the contractor to warrant that products used in the modernization project were of good quality and its work conformed to the contract's requirements. The subcontract passed these obligations onto KONE.

KONE argues that Icon West's rejection of KONE's proposed use of its proprietary controller demonstrates that

---

[13] At oral argument, counsel for KONE invoked *Spearin*, in which the United States Supreme Court held that a contractor is not liable for the consequences of defects in specifications provided by the owner because those specifications "import[ ] a warranty that, if the specifications were complied with, the [work] would be adequate." (*Spearin, supra*, 248 U.S. at p. 137.) The parties' appellate briefs did not discuss in any detail whether the *Spearin* rule applies to the specifications in the prime contract. (See *Stuyvesant Dredging Co. v. U.S.* (Fed. Cir. 1987) 834 F.2d 1576, 1582 [*Spearin* rule applies to design specifications, which "permit no deviations," not to performance specifications, which specify results to be obtained].) However, the trial court concluded the express warranty provisions of the prime contract supersede *Spearin*'s implied warranty. (See also *Rhone Poulenc Rorer Pharmaceuticals Inc. v. Newman Glass Works* (3d Cir. 1997) 112 F.3d 695, 698 [implied warranty based on the specification of type and manufacturer of product "must yield to [subcontractor's] express warranties against defective materials"]; see *id*. at pp. 697–698.) No party has challenged this ruling.

33

KONE was required to use the MCE controller.[14] Yet, the very fact that KONE's proposed controller was proprietary means that it did not comply with the design set forth in the prime contract, which required use of a *non-proprietary* controller. KONE also identifies no evidence in the record demonstrating that its proprietary controller was equal or superior to the MCE controller and would have satisfied the standards set forth in the prime contract. Thus, we need not decide whether Icon West and the Regents would have furnished a defective design to KONE had KONE proposed a substitute controller that satisfied the specifications of the prime contract and Icon West or the Regents rejected that substitution. In any event, KONE conceded at oral argument that its proposal of an alternate controller was a "red herring."

KONE also contends that it cannot be held responsible for any defect in the MCE controller because it submitted the MCE controller to the Regents' elevator engineering consultant for approval. KONE does not identify any language in the prime contract or subcontract establishing that a consultant's approval relieves KONE of the contractual obligations to ensure the products used are of good quality or to modify a specified product to conform to the standards of the prime contract.

In sum, the elevator design did not mandate the use of the defective controller. As such, the elevator was not "inherently unfit" because KONE constructed it "substantially in accordance"

---

14     KONE's counsel asserted at oral argument that there was no evidence that KONE's proposed controller was proprietary. However, KONE represented in its surreply and in briefing submitted below that the controller it proposed to Icon West *was* proprietary.

with the design requirements the Regents furnished to KONE. Instead, the injury resulted from a latent defect in a part for which KONE was ultimately responsible under the totality of the provisions of the prime contract and subcontract. Whether a contractor or subcontractor would be responsible for latent defects in a product specified by an owner in a contract that contains only some of the provisions discussed is not before us, and we do not decide that issue.

Accordingly, this exception to the indemnity provision does not serve as an alternative ground for affirming the trial court's orders granting summary adjudication in favor of KONE on the issue of its contractual duty to indemnify Icon West and the Regents.[15]

## III. Icon West Was Not Obligated to Indemnify KONE Under the Subcontract and Maintenance Agreement

Icon West also challenges the trial court's determination that it was required to indemnify KONE pursuant to the maintenance agreement, which the trial court concluded was incorporated by reference in the bid letter, which in turn was incorporated by reference in the subcontract through the rider. We agree that the offer to enter into the maintenance agreement in the bid letter was not a clear and unequivocal incorporation of the maintenance agreement into the subcontract. Moreover, the

---

[15] Because we conclude that KONE was independently required to indemnify the Regents, we need not reach Icon West's argument that the provision stating that "[KONE] agrees to be bound to [Icon West] in the same manner and to the same extent as [Icon West] is bound to [the Regents] under the [prime contract]" requires KONE to defend and indemnify the Regents on Icon West's behalf.

undisputed facts establish that the maintenance agreement was no longer in effect at the time the accident occurred.

### A.    Background

KONE's bid letter to Icon West was dated June 1, 2010.  In a section entitled "Special Offer," the bid stated: "If our standard maintenance program could be accepted along with our standard maintenance contract document in lieu of the maintenance requirements outlined in the specification our maintenance pricing would be as follows: [$545 per elevator for interim maintenance.]"  KONE's maintenance agreement "is a standard document KONE uses where . . . KONE's modernization work does not begin until some time after the General Contractor takes possession of a site [from] the owner, and the elevator system needed to be maintained until KONE began its work."

This is consistent with the attachment to KONE's bid letter, which explained that KONE would perform maintenance service "during the material ordering process" pursuant to an interim maintenance agreement at a price to be negotiated by the parties.  In contrast, warranty maintenance would commence "at the turnover of the elevator to the owner/building for use and after governing agency inspection."

The parties' maintenance agreement was dated July 26, 2010.  An agent of Icon West signed it on July 30, 2010.  The pricing in the maintenance contract matches the "Special Offer."

The maintenance agreement also contained an indemnity provision.  An attachment to the agreement made approximately a dozen changes to the language of the form contract, including that of the indemnity provision.  As modified, the indemnity provision stated: "[Icon West] shall indemnify, defend, and save harmless KONE from and against liabilities, losses and claims of

36

any kind or nature imposed on, incurred by, or asserted against KONE arising out of services by KONE under [the maintenance contract] or the use or operation of the equipment unless such act arose out of negligence or intentional misconduct of KONE." It further stated that Icon West "waives any and all rights of recovery, arising as a matter of law or otherwise, which [Icon West] might now or hereafter have against KONE."

The parties executed Rider No. 1 to the subcontract on August 18, 2010. It "add[ed] KONE Inc.'s bid letter dated June 1, 2010 as a contract document." The rider also stated that "KONE will effectively start the warranty/warranty maintenance on all four elevators when the modernization work is completed, inspected and KONE will provide the Uniform final acceptance form to be signed by KONE and Icon West Inc." Under a paragraph titled "Warranty Maintenance," the prime contract required "full maintenance services on all newly modernized equipment for a period of twelve (12) months from final acceptance of all equipment."

On September 1, 2010, an agent of Icon West signed the bid letter and the subcontract.

KONE assumed maintenance obligations for the relevant elevators on August 16, 2010, and continued to maintain the elevators until March 14, 2011, when construction began. KONE completed the modernization work on or about August 11, 2011, and issued a warranty for its work under the subcontract for the period of August 19, 2011 to August 19, 2012. KONE performed its last service call on July 12, 2012.

At the bench trial, Icon West argued that the maintenance agreement was no longer in effect upon the completion of the modernization work. It submitted an excerpt of the deposition

37

testimony of KONE's person most knowledgeable (PMK) to support its contention, which the court admitted into evidence. The PMK testified that the maintenance agreement came to an end when the elevators received state approval and KONE subsequently performed maintenance pursuant to guarantee provisions in the subcontract. KONE offered to call the PMK as a trial witness to testify that the maintenance and modernization work happened at the same time. The court declined to hear the testimony because it would not "assist[ ] [the court] in interpreting the contract."

The trial court noted the prior ruling that KONE was not negligent and found Icon West was required to indemnify KONE pursuant to the maintenance agreement's indemnity provision.

**B.      We consider this issue de novo**

The parties dispute whether the maintenance agreement's indemnity provision could be deemed to cover Truong's complaint, which sought damages for an incident that occurred several years after KONE had performed any maintenance on the residence hall elevators. Below and on appeal, KONE has argued the indemnity provision continued to apply because the maintenance agreement was incorporated into the subcontract, and the subcontract provided that *its* indemnification provisions extend to claims occurring after the subcontract is terminated. The trial court accepted this argument.

KONE contends the trial court's determination that the maintenance agreement was incorporated into the subcontract through the rider was "predicated on factual findings indicating that both KONE and Icon West intended" its incorporation. KONE argues that we must therefore review the trial court's ruling under the deferential substantial evidence standard. Yet,

KONE does not identify any admitted evidence that addressed the parties' intent at the time they entered into the relevant agreements or any findings of fact the trial court made regarding intent. The trial court relied on the provisions of the rider, bid letter, and maintenance agreement in making its ruling.

KONE asserts in a footnote that "the trial court found as it did in the face of conflicting extrinsic evidence presented at trial." KONE refers to the deposition testimony of KONE's PMK. However, the trial court did not admit other extrinsic evidence that contradicted the testimony of KONE's PMK.[16] When, as here, the extrinsic evidence is undisputed, contractual interpretation is a question of law which we consider de novo.

### C. The rider did not unambiguously incorporate the maintenance agreement by reference into the subcontract

"The phrase 'incorporation by reference' is almost universally understood, both by lawyers and nonlawyers, to mean the inclusion, within a body of a document, of text which, although physically separate from the document, becomes as much a *part* of the document as if it had been typed in directly." (*Republic Bank v. Marine Nat. Bank* (1996) 45 Cal.App.4th 919, 922.) "[T]he doctrine of incorporation by reference generally 'requires that (1) the reference to another document was clear and unequivocal; (2) the reference was called to the attention of the other party, who consented to that term; and (3) the terms of the incorporated documents were known or easily available to the

---

[16] KONE did not argue in its cross-appeal that the trial court erred in excluding additional testimony from its PMK.

contracting parties.' [Citation.]" (*Yu v. Liberty Surplus Ins. Corp.* (2018) 30 Cal.App.5th 1024, 1032.)

"The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.' [Citations.]" (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54.) "But it is not simply the party's awareness of the other document that is required. To impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1608 (*Amtower*); *id*. at p. 1609 [mention of separate agreement "not the same as specifically directing the parties' attention to the terms of the external document in a manner that could be construed as eliciting the parties' consent to its separate terms"].) Further, "what is being incorporated must actually exist at the time of the incorporation, so the parties can know exactly what they are incorporating." (*Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1194, italics omitted.)

The parties' incorporation of the bid letter into the subcontract does not demonstrate a "clear and unequivocal reference to the fact that the terms of [the maintenance agreement were] incorporated." (*Amtower, supra,* 158 Cal.App.4th at p. 1608.) The only reference to a maintenance contract in the bid letter was to KONE's form contract in the context of a "special offer" KONE was extending. Although Icon West signed the bid letter after the parties signed the maintenance agreement, the bid letter was sent before that agreement was reached. (See, e.g., *Versaci v. Superior Court*

40

(2005) 127 Cal.App.4th 805, 817 [reference in employment contract to the fact that goal setting would be part of the evaluation process did "not clearly and unequivocally evidence the parties' intent to incorporate the yet to be determined goals into the contract"].)  The mere mention of a form maintenance contract could not incorporate the terms of the executed maintenance agreement, which modified KONE's form contract in a dozen respects.

Notably, the parties had already entered into the maintenance agreement at the time they executed the rider to the subcontract.  Had they intended the maintenance agreement to be part of the subcontract, they could have expressly incorporated it as a contract document, as they did with the bid letter.

### D. The maintenance agreement was not in effect at the time of the accident

Icon West additionally argues that the maintenance agreement's indemnity provision could not have applied because the maintenance agreement terminated or was abandoned by the parties years before the accident that injured Truong occurred.  Accordingly, the indemnity provision of the maintenance agreement was no longer in effect, and the indemnity provision of the subcontract controlled.  The undisputed facts support this argument.

"A contract remains in force until it has been terminated either according to its terms or through the acts of the parties evidencing an abandonment.  [Citation.]  Abandonment of a contract is a matter of intent and is to be ascertained from the facts and circumstances surrounding the transactions out of which the abandonment is claimed to have resulted.  It may be

41

implied from the acts of the parties." (*Busch v. Globe Industries* (1962) 200 Cal.App.2d 315, 320.) "While the question of abandonment is one of intention to be determined only upon an investigation of all the facts and circumstances, still[,] where there is no dispute as to the facts or the inferences to be drawn therefrom[,] the question becomes one of law." (*Herbert v. Graham* (1925) 72 Cal.App. 314, 316.)

The pertinent facts are undisputed, and the issue is therefore one of law. The maintenance agreement provided that the agreement would renew unless either party provided written notice of termination. However, the bid letter, rider, and prime contract each support the conclusion that the maintenance agreement terminated long before Truong's injury occurred. These agreements establish that, after KONE completed work on the elevators and the elevators received state operating permits in August 2011, KONE performed maintenance work pursuant to its warranty obligations, not the maintenance agreement.

The bid letter, which was incorporated into the subcontract, distinguished between work performed pursuant to the interim maintenance agreement, which took place before KONE began modernization work on the elevators, and KONE's warranty maintenance obligations, which commenced upon completion of the work. The prime contract required 12 months of warranty service following acceptance of the elevators. The rider provided that KONE would start its warranty maintenance obligations after the modernization work was completed and KONE and Icon West signed an acceptance form. Moreover, in an undisputed declaration submitted below, KONE explained that it performed interim maintenance services between August 16, 2010 and

March 14, 2011, and assumed warranty maintenance obligations for the period of August 19, 2011 to August 19, 2012.

Even if these agreements do not establish that the parties' mutual obligations under the maintenance agreement ended, at the latest, upon Icon West's approval of KONE's work and the Regents' acceptance of the modernized elevators, additional undisputed evidence established that KONE and Icon West abandoned the maintenance agreement. KONE performed maintenance on the elevators for the last time in July 2012, three years before the accident occurred. KONE does not challenge Icon West's assertion that this evinced KONE's intent to no longer be bound by the terms of the maintenance agreement.

Unlike the subcontract's indemnity provision, the maintenance agreement's indemnity provision does not contain any language extending its provisions past the termination of the agreement. As we understand its argument, KONE's only basis for asserting that the maintenance agreement's indemnity provision governed the parties' obligations in this case is that it was incorporated into the subcontract.[17] We have rejected that argument above. We additionally note that the subcontract provides that "[t]he indemnification provisions of (a) through (g) [of section 12.1 of the subcontract] shall extend to Claims occurring after this Subcontract is terminated as well as while it is in force." Even if the maintenance agreement was incorporated

[17] On appeal, KONE argues that Truong's injuries arose from the "use or operation of the equipment" and were therefore covered by the maintenance agreement's indemnification provision. This argument appears to respond only to Icon West's contention that, even if still in effect, the maintenance agreement's indemnity provision would not cover the claims at issue—a contention we need not address.

by reference into the subcontract, its indemnity provision is not among the provisions that extend to claims arising after the termination of the subcontract. In short, Icon West was not required to indemnify KONE pursuant to the maintenance agreement.

## DISPOSITION

The order granting summary adjudication in KONE's favor and against Icon West and the Regents on the issue of contractual indemnity is reversed.  The judgment entered against Icon West is also reversed.  We remand for further proceedings on the amount of judgment to be entered against KONE based on our conclusion that KONE is obligated to defend and indemnify the Regents and Icon West under the terms of the prime contract and subcontract.  Icon West shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.